UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

UNITED STATES OF AMERICA                   :

   -v.-                                            :        S1 07 Cr. 961 (KBF)

DAVID NORMAN,                              :
       a/k/a "Jim Norman,"
                               :

         Defendant.
                               :
-------------------------------------------------------------x


### GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR RULE 15 DEPOSITIONS


PREET BHARARA
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007


Andrew D. Goldstein
Howard S. Master
Assistant United States Attorneys
- Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

UNITED STATES OF AMERICA        :

  -v.-                                 :       S1 07 Cr. 961 (KBF)

DAVID NORMAN,              :
      a/k/a "Jim Norman,"
                                 :

         Defendant.
                                 :

------------------------------------------------------------x

## GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR RULE 15 DEPOSITIONS

       The Government respectfully submits this memorandum of law in opposition to the defendant's Motion for Rule 15 Depositions (the "Def. Mot."). As set forth below, the defendant's motion, which seeks the depositions of John Bailey, Allan Reed and Ann Henshaw in Canada, and the deposition of Marchel Kelley in Idaho, fails to make the showings required to justify the exceptional remedy of Rule 15 depositions. More specifically, the motion does not sufficiently establish (a) that any of the witnesses would in fact be unavailable to testify at trial, (b) that their testimony would be material to the defense, or (c) that their testimony is necessary to prevent a failure of justice. Accordingly, the motion should be denied.

## RELEVANT FACTS

*Case Background*

       David Norman, a/k/a "Jim Norman," is the sole remaining defendant in case 07 Cr. 961 (KBF). Superseding Indictment S1 07 Cr. 961 (KBF) (the "Indictment") charged Norman, along with co-defendants Olivia Jeanne Bowen and Noemi Dodakian, a/k/a "Emi Dodakian," with conspiracy to commit wire fraud, in violation of Title 18, United States Code,

1

Section 1349, and also charged Bowen, Dodakian and two other defendants, Robert Ingram and

Chong Shing Wu, with a separate count of conspiracy to commit wire fraud based on a fraud

scheme led by Ingram that was similar and related to that alleged in Count One.

   The substance of Count One, with which Norman is charged, is that Norman and

his co-defendants operated a high-yield investment scam, sometimes called the "Jim Norman

Program," that defrauded individuals of millions of dollars.  Norman told his victims that he had

millions of dollars in an investment portfolio in Europe, and that certain fees had to be paid in

order to access the funds.  Along with the other perpetrators of the fraud, Norman claimed that

once the money was released, investors would receive substantial payouts valued at multiples of

their initial investments, and that the remainder of the funds would be used for philanthropic

purposes.  Victims duped by the scheme ultimately turned over to Norman and others millions of

dollars, but because the investment program was a complete fraud, victims did not receive the

promised returns on their investments.  Evidence against Norman gathered over the course of the

investigation includes, among other things, statements of victims who invested in the Jim

Norman program based on representations made by Norman and his co-conspirators; emails,

promissory notes, and other investment documents sent by the defendant and co-conspirators

promising exorbitant returns in a short time frame and proffering explanations when the

promised returns failed to materialize; consensual recordings of the defendant and co-

conspirators; and actions taken by FBI agents, acting in an undercover capacity, in connection

with the FBI's investigation of Norman.

   Bowen pleaded guilty to both counts of the Indictment on April 13, 2010.  Ingram

pleaded guilty to Count Two of the Indictment on April 8, 2010.  Dodakian and Wu went to trial

in October 2010, and were convicted by a jury on each of the counts with which they were

charged.  Judge Sand sentenced Bowen principally to 63 months' imprisonment, Ingram to 144 months' imprisonment, Dodakian to 95 months' imprisonment, and Wu to 85 months' imprisonment.  While Bowen did not appeal, Ingram appealed his sentence, and Dodakian and Wu appealed their convictions and sentences.  The Second Circuit affirmed the convictions and sentences by summary order on July 27, 2012.

While proceedings against the remaining defendants were pending, Norman was arrested in Canada and, after his challenges to extradition were denied, was extradited to the United States in November 2011.  He has remained in custody since his arrival in the United States pending trial on the charge pending against him in the Indictment.

*The Witnesses Whose Depositions the Defendant Seeks*

Norman seeks to take the depositions of four witnesses pursuant to Rule 15 of the Federal Rules of Criminal Procedure: Marchel Kelley, Ann Henshaw, John Bailey, and Allan Reed.  According to the defendant's motion, the witnesses' relationships to the defendant, and the reasons for their purported unavailability, are as follows:

*Marchel Kelley*.  The defendant states that Kelley was an investor in the "Jim Norman Program."  (Def. Mot. 2).  The defendant claims that Kelley is unavailable, even though she resides in the United States, because she "has an upcoming show and cannot afford the time to be away."  (Def. Mot. 3).

*Ann Henshaw*.  According to the defendant, Henshaw was Norman's girlfriend for approximately 10 years prior to his arrest and resided with Norman during the time period alleged in the Indictment.  (Def. Mot. 2).  The defendant does not claim that Henshaw is unwilling to travel to New York to testify; rather, he asserts that it would be a "financial

hardship" for her to come to New York and it would be "cost effective" for her deposition to be taken if other depositions in Canada were ordered to take place at the same time.  (Def. Mot. 3).

   *John Bailey*.  According to the defendant, Bailey was Norman's personal accountant for at least 10 years prior to Norman's arrest, and "[d]uring this time, Mr. Bailey assisted Defendant Norman[] in all of his personal accounting and tax issues and was fully familiar with Defendant Norman's personal and business financial situations."  (Def. Mot. 2). With regard to unavailability, the defendant asserts that Bailey "absolutely refuse[s] to appear in New York," even if Norman had the funds to pay for his travel and lodging.  (Def. Mot. 3).

   *Allan Reed*.  The defendant states that Reed "is a long time friend of Norman," and was an investor in the "Jim Norman Program."  The defendant asserts that Reed "possess[es] intimate knowledge of the dealings as well as Norman's representations to prospective investors."  (Def. Mot. 2).  The defendant asserts that Reed, like Bailey, "absolutely refuse[s] to appear in New York," even if Norman had the funds to pay for his travel and lodging.  (Def. Mot. 3).

## APPLICABLE LAW

   By the terms of Rule 15 itself, pre-trial depositions in criminal cases are reserved for "exceptional circumstances."  Fed. R. Crim. P. 15(a)(1); *see United States* v. *Cohen*, 260 F.3d 68, 78 (2d Cir. 2001); *see also United States* v. *Drogoul*, 1 F. 3d 1546, 1551 (11th Cir. 1993) ("[d]epositions generally are disfavored in criminal cases").  The antipathy toward depositions is due in part to the fact that they deprive the fact-finder of the ability to observe the demeanor of witnesses live and in court.  *See id.* at 1552; *United States* v. *Ismaili*, 828 F.2d 153, 159 (3d Cir. 1987); *United States* v. *Oudovenko*, No. 00 Cr. 1014, 2001 WL 253027, at *4 (E.D.N.Y. Mar. 7,

2001) ("By depriving the jury of the opportunity to observe the witnesses as they testify, the jury is hampered in its ability to make credibility assessments and to weigh the evidence fairly.").

To establish that "exceptional circumstances" exist, the "movant must show that (1) the prospective witness is unavailable for trial, (2) the witness' testimony is material, and (3) the testimony is necessary to prevent a failure of justice." *Cohen*, 260 F.3d at 78; *see also United States* v. *Johnpoll*, 739 F.2d 702, 709 (2d Cir. 1984). "The burden is on the moving party to demonstrate both the materiality of the testimony and the unavailability of the witness." *Oudovenko*, 2001 WL 253027 at *1 (citing *United States* v. *Whiting*, 308 F.2d 537, 541 (2d Cir. 1962)).

With regard to the first requirement – that the witness be unavailable – the mere fact that a purported witness resides in a foreign country does not demonstrate his or her "unavailability" for Rule 15 purposes. *See*, *e.g.*, *Oudovenko*, 2001 WL 253027 at *2-*3 (holding foreign witnesses not "unavailable" within meaning of Rule 15); *United States* v. *Ismaili*, 828 F.2d 153, 160 (3d Cir. 1987) (holding defendant failed to prove unavailability of witnesses residing in Morocco). Rather, the moving party must show that the foreign witness is truly unable or unwilling to come to the United States to testify, and that the moving party has made a "good faith effort to produce the person to testify at trial." *Johnpoll*, 739 F.2d at 709. The efforts of the movant to produce the witness at trial are judged by a reasonableness standard. *Id.*; *Oudovenko*, 2001 WL 253027, at *4 (affirmations of counsel stating that witnesses were unwilling to testify at trial were insufficient to establish good faith effort to produce witnesses). Courts should not accept the representations of counsel on the facts relating to unavailability if those representations are either conclusory or speculative. *See Whiting*, 308 F.2d at 541; *United States* v. *Varbaro*, 597 F. Supp. 1173, 1181 (S.D.N.Y. 1984) ("Although [Rule 15] does not

necessarily require a showing of certainty that a witness will be unavailable, surely it requires a showing of a specific reason why the witness might not be available.").

        With regard to the second requirement – materiality – courts have held that the moving defendant must show, beyond "unsubstantiated speculation," that the testimony sought "exculpates the defendant."  *United States* v. *Kelley*, 36 F.3d 1118, 1125 (D.C. Cir. 1994) (holding that denial of depositions not an abuse of discretion where anticipated testimony, although relevant, was not exculpatory) (internal quotation marks and citation omitted); *see also United States* v. *Esquivel*, 755 F. Supp. 434, 439 (D.D.C. 1990) ("a defendant typically demonstrates the 'exceptional circumstances' necessary for success on a Rule 15(a) motion by some preliminary showing that the testimony will exculpate him" (citation omitted)); *United States* v. *Merritt*, No. 90 Cr. 767 (JSM), 1991 WL 79235, at *5 (S.D.N.Y. May 7, 1991) (denying Rule 15 deposition request where "the defendants have made no showing that the deponents' testimony would be exculpatory").  Thus, the moving party must do considerably more than show that the testimony sought is relevant to the case.  *Ismaili*, 828 F.2d at 161 & n.6 (holding that a district court could not have abused its discretion in denying a Rule 15 deposition where the testimony "could not negate the crux of the government's indictment"); *see also, e.g.*, *Whiting*, 308 F.2d at 541 (affirming denial of Rule 15 motion where showing of materiality to defense was "vague and indefinite").

        The final prerequisite to granting a Rule 15 deposition is that the testimony is necessary to prevent a failure of justice.  *Cohen*, 260 F.3d at 78.  In applying this standard, courts have considered whether there are substantial countervailing factors militating against the taking of the depositions, including causing a delay in the commencement of trial.  *See, e.g.*, *Johnpoll*,

739 F.2d at 709; *Drogoul*, 1 F.3d at 1556 ("An obviously important factor is whether a deposition will expedite, rather than delay, the administration of criminal justice.").

## DISCUSSION

**A.     *The Defendant Has Failed To Show That the Witnesses Are Unavailable***

The defendant has not met his burden of establishing that any one of the witnesses, let alone all four of them, is unavailable to testify at trial.  With regard to Henshaw, the defendant simply states that she lacks funds to support travel to New York for the trial, and that it would be "cost effective" to take her deposition in Toronto were the Court to order depositions of Bailey and Reed, even though she is willing and able to come to New York to testify.  But to the extent cost of travel is an issue, it is the Government's understanding that defense counsel can work with the Court's Criminal Justice Act ("CJA") coordinator to obtain funding for witnesses to travel to New York to testify.[1]

With regard to Kelley, who resides in Idaho, the defendant admits that she is within the reach of the Court's subpoena power, and he cites no physical disability that would prevent her from testifying at trial.  There is thus no reason why Kelley cannot be compelled to testify at trial pursuant to a subpoena issued by this Court.  In any event, neither the cost of travel for Henshaw, nor the inconvenience to coming to New York for Kelley, comprise the sort of "exceptional" circumstances that would render either witness unavailable.

With regard to Bailey and Reed, the only proffered evidence of the two witnesses' unavailability is the defendant's own conclusory assertions that they "absolutely refuse to appear in New York" even if the defendant were able to cover their travel expenses.  These statements fail to demonstrate the existence of exceptional circumstances because they do not establish that

---

[1] Defense counsel has, for example, obtained CJA funds for travel *to* Canada, and there is no indication that defense counsel has determined that CJA funds would be unavailable to support travel *from* Canada of a defense witness whose testimony is material to the defense.

the defendant has engaged in good-faith efforts to secure the witnesses' presence at trial, nor that the defendants in fact would be unwilling to appear as defense witnesses at trial.  In *Oudovenko*, for example, Judge Gleeson found that even where, as here, witnesses indicated they "would not travel voluntarily to the United States to testify at [defendant's] trial," 2001 WL 235027 at *2, the defendant had failed to establish that the witnesses were unavailable where there was no evidence that the defendant had offered to pay the witnesses' travel expenses, and where the defendant had relationships with the witnesses that suggested he would be able to prevail upon them to travel to the United States for trial.  *Id.* at *3; *see also*, e.g., *United States* v. *Ruiz-Castro*, 92 F.3d 1519, 1533 (10th Cir. 1996) (affirming denial of Rule 15 deposition of the defendant's father on ground that the defendant "offered no proof that his father was unable to travel to the United States other than [the defendant's] statement that his father was an invalid too ill to travel"); *United States* v. *Ionia Management S.A.*, 499 F. Supp. 2d 166, 168 (D. Conn. 2007) (holding that foreign witnesses were not unavailable for trial absent further showing that the defendant had made a good faith effort to get them to appear); *Esquivel*, 755 F. Supp. at 440 (prospective foreign witness not unavailable because "she has not been indicted in this case and apparently faces no other criminal charges in the United States" that would prevent her from appearing).  The defendant has made no showing of any actual reason, physical or otherwise, that prevents Bailey or Reed from appearing; nor has he described his good faith efforts to get Bailey or Reed to appear, *e.g.*, by seeking authorization to use CJA funds to cover travel expenses and making the availability of funding known to Bailey and Reed; nor has he shown that Bailey or Reed faces any sort of legal jeopardy or other impediment to their travel to the United States.  Moreover, based on the defendant's description of his close relationships with both Bailey and Reed, there is no reason to believe that the defendant would be unable to prevail upon both

Bailey and Reed to travel to New York to testify on his behalf.  Accordingly, the defendant has failed to meet his burden of establishing that either Bailey or Reed is unavailable.[2]

**B.      *The Testimony of the Witnesses Would Not Be Exculpatory***

        The defendant's motion also fails because the defendant is almost certainly unable to show that the witnesses' prospective testimony would be material – *i.e.*, that it would be exculpatory or has the potential to "negate the crux of the government's indictment," *Ismaili*, 828 F.2d at 161 & n.6.  While the defendant's proffered showing of materiality has been made *ex parte*, and accordingly the Government is unable to respond to the specifics of the defendant's submission on this point, the Government is doubtful that these witnesses could offer any testimony that would meet the high bar necessary to warrant Rule 15 depositions.

        With regard to Bailey, who did accounting work for the defendant for a number of years, agents for the Federal Bureau of Investigation ("FBI"), working with the Royal Canadian Mounted Police, interviewed Bailey in July of this year.  Based on Bailey's statements during the interview, it appears that Bailey would in fact tend to inculpate Norman, not exculpate him.  Among other things, Bailey told the FBI that he believed Norman's investment program was a scam, and that he told Norman as much on several occasions, and that he did not view the

---

[2] The defendant cites *United States* v. *Grossman*, No. S2 03 Cr. 1156 (SHS), 2005 WL 486735 (S.D.N.Y. Mar. 2, 2005), for the proposition that a witness in Canada can be found to be unavailable by declining to appear in New York for trial.  (Def. Mot. 3).  In *Grossman*, however, Judge Stein relied on an extensive factual record regarding the witness's unavailability that plainly is not present here.  Judge Stein cited the following facts, which were drawn from multiple affidavits filed in support of the defendant's motion: "(1) Olshenitsky [the prosective witness] is a resident of Canada and thus beyond the subpoena power of the court (Reich Aff. ¶ 6); (2) defense counsel maintained a seven month relationship with Olshenitsky during which he repeatedly expressed a willingness to testify in person at the trial (*id.* ¶¶ 7-12); (3) however, in mid-February 2005 Olshenitsky stopped responding to defense counsel's attempts to contact him via e-mail and telephone (*id.* at ¶ 15); (4) when defense counsel contacted Olshenitsky's wife, she acted evasively (*id.* ¶¶ 15-16); (5) in a further effort to contact Olshenitsky, defense counsel then contacted Alan Gold, a Canadian lawyer who had previously represented Olshenitsky (Reich Supplemental Aff. ¶¶ 6-7); (6) during a conversation between defense counsel, Mr. Gold, and Olshenitsky, Olshenitsky flatly and repeatedly refused to come to the United States to testify, stating that he was "very upset with New York Health Care" due to the cancellation of his warrants (*id.* ¶ 7); and (7) Olshenitsky persisted in his refusal to testify at trial despite defense counsel's offer to pay the cost of his flight, hotel, and incidentals (*id.* ¶ 8)."  It goes without saying that the defendant has not made anything close to such a showing here.

company that Norman used to receive funds from investors as a real company with any assets or legitimate business activities.  Bailey further stated that on one occasion, Norman had an investor wire thousands of dollars directly into Bailey's bank account, without prior notice to Bailey, and Bailey then turned the money over to Norman.  After the investor went to Canadian authorities, Bailey was arrested and required to pay the investor back, and despite promising to do so, Norman never reimbursed Bailey.  Based on these statements, it is hard to imagine how Bailey's testimony could serve to exculpate Norman.

With regard to Reed and Kelley, who were investors in the Jim Norman Program, it is also difficult to imagine how their testimony could be exculpatory.  Even if Reed and Kelley were to testify that they, unlike other victims of Norman's scam, were not duped by Norman, that would have little if any relevance at trial, because they were not privy to all of Norman's communications with other victims of his scheme, and accordingly cannot testify one way or the other as to whether other individuals were duped by Norman.  Even if Norman did not defraud Reed and Kelley, he would still be guilty of the crime charged in the Indictment if he made material misrepresentations or omissions to other investors in order to get them to invest money in the Jim Norman Program.

Finally, with regard to the defendant's girlfriend, Henshaw, the Government has little information regarding her potential testimony, in part because she refused to give a voluntary statement to Canadian or United States law enforcement.  Norman did, however, direct that funds be wire transferred to Henshaw in furtherance of the scheme, as reflected by evidence gathered over the course of the Government's investigation, including a $2,000 wire transfer to Henshaw by an FBI agent acting in an undercover capacity.  It is highly doubtful that the testimony of such a witness, who helped received funds on behalf of the defendant, and who

undoubtedly was not privy to all of Norman's communications with and representations to his various victims, could offer testimony that would help exculpate him and thereby meet the standard of materiality required under Rule 15.  To the extent that the defendant hopes Henshaw would testify about statements he made to her regarding the scheme, or about his purported belief that the scheme may have been legitimate, such testimony would be inadmissible hearsay.

**C.**    ***The Depositions Are Not Necessary To Prevent a Failure of Justice***

        For the same reasons that the depositions do not meet the Rule 15 standard of materiality, failure to order the depositions would not cause a failure of justice.  To the extent that any of the witnesses' testimony would be relevant and admissible, it almost certainly would not go to the heart of the issues in the case, nor would it have the potential to exculpate the defendant.  On the contrary, Rule 15 depositions taken in Canada, even with the cooperation of Canadian authorities, would likely cause further delay in a trial that has already been delayed for years, due in part to the defendant's foreign residence and his efforts to contest extradition proceedings against him.

## <u>CONCLUSION</u>

For the foregoing reasons, the defendant's motion to take depositions of John Bailey, Allan Reed, Marchel Kelley and Ann Henshaw pursuant to Rule 15 of the Federal Rules of Criminal Procedure should be denied in its entirety.

Dated:  New York, New York
        September 28, 2012

<div style="margin-left:40%">

Respectfully submitted,
PREET BHARARA
United States Attorney

By: ___/s/_____

Andrew D. Goldstein
Howard S. Master
Assistant United States Attorneys
Southern District of New York
(212) 637-1559/2248

</div>

**<u>CERTIFICATE OF SERVICE</u>**

        I, Howard S. Master, Assistant United States Attorney for the Southern District of New York, hereby certify that on September 28, 2012, I caused a copy of the foregoing Sentencing Memorandum to be served by email and ECF upon the following:

Deveraux Cannick
Aiello & Cannick
69-06 Grand Avenue
Maspeth, New York 11378
DCannick@aiellocannick.com

Dated:      New York, New York
             September 28, 2012

                                           /s/ Howard S. Master
                               Howard S. Master
                               Assistant United States Attorney
                               Southern District of New York
                               (212) 637-2248